No. 23,698.

SELMA BREHM, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. COMMON CARRIER—*Injuries to Passenger—Fingers Caught in Door Jamb—Contributory Negligence.* A railway carrier is not liable in damages for injuries sustained by a passenger of mature years who when in the act of leaving the car at her destination places her fingers in the door jamb of the passenger coach and the door is blown shut by a gust of wind, when she knew that the door was not fastened and knew it had been swinging freely "all the time" during her railway journey of 65 miles.

2. SAME—*Evidence Insufficient to Sustain Alleged Charge of Negligence.* When the uncontradicted and conceded facts show that a passenger-car door was swinging freely and not fastened back to the door catch, a jury's finding of defendant's negligence that the brakeman "did not fasten door back securely" cannot be sustained.

3. SAME—*Passenger Leaving Car—Fingers Caught in Door Jamb—Injuries Result of An Accident.* The facts touching an injury to a passenger who placed her hand in the door jamb of a pasenger coach, examined, and held to be an accident, and not the result of negligence on the part of the defendant railway company.

Appeal from Edwards district court; ROSCOE H. WILSON, judge. Opinion filed May 6, 1922. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *William Osmond,* of Great Bend, for the appellant.

*W. E. Broadie,* of Kinsley, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff recovered damages for injuries to her hand which was caught in the door jamb of a railway car.

One day in July, 1920, the plaintiff was a passenger on defendant's train between Offerle and Ellinwood, a distance of some 65

miles. The day was warm, and the windows were open, and the forward door of the car was open and swinging back and forth. Plaintiff sat on the north side of the car facing eastward and observed the swinging of the door for a considerable part of the journey. The door was hinged on the north side of the door casing. When the train stopped, she arose and in passing out she pushed the door, which was ajar, slightly further open and placed her left hand in the door jamb, and a gust of wind slammed the door shut and injured her fingers. She testified:

"I rode on one of the front seats in the passenger coach on the left side. I was sitting on the first seat. . . . The train reached Ellinwood after one o'clock. The windows of the coach in which I was riding were all open except the one window in the front seat. When we reached Ellinwood the conductor announced the station. . . . He [the brakeman] said to me that I should keep my place and wait until the train stopped, and he took my grips and went out of the door of the car onto the platform. . . . My seat was facing east toward the door that I went out. I had in my hand a little hand satchel. The door of the coach was swinging on the hinges. The brakeman, when he went out, didn't fasten this door to the side of the train. I went straight out of the door where the brakeman . . . had passed through. I didn't notice where the brakeman was when I started to get off the train and smashed my fingers. . . . After I got through the door I was stepping down, and the door swung and the fingers were caught. As I started to go down the steps, my hand was on the door-casing. I placed it there to help myself in getting down. . . . While I was in the act of stepping off the car, the door slammed back and came clear shut and my fingers were caught there in the door. They were on the inside of the door."

On cross-examination she testified:

"The door had been standing that way all the time. It was standing there loose, swinging back and forth. I knew it was swinging back and forth. I am certain about that. It would swing nearly shut. I saw it swing nearly shut, all the time . . . while I was traveling along. I had to touch it to get through, so that there would be room to get through. At times it was swinging hard, would swing a good ways. It swung a good ways before I got there, and I noticed that.

"I was a pretty strong, healthy woman before that, could walk all right. I had traveled more or less on the cars, to Chicago, Kansas City, and all over, and was accustomed to traveling."

The jury's verdict was in favor of plaintiff, and special questions were answered:

"Q. 1. If you find from the evidence that the defendant was guilty of negligence, state fully in what such negligence consisted and who was guilty of such negligence. A. Brakeman did not fasten door back securely. . . .

"Q. 3. If you find from the evidence that the car door was unfastened,

state then how long it had been unfastened. A. A considerable part of the way from Offerle to Ellinwood.

"Q. 4. If you find from the evidence that the car door was unfastened and swinging back and forth, did the plaintiff know such fact before she started to leave the car? A. Yes.

"Q. 5. Did the plaintiff, knowing that the car door was unfastened and swinging back and forth, while going to the platform partially open said car door to get through? A. Yes.

"Q. 6. Did the plaintiff, knowing that the car door was unfastened and swinging back and forth and after partially opening said door to get through, then place her hand on the door frame where it was liable to be injured by the swinging of said car door? A. Yes. . . .

"Q. 8. What caused the car door to slam shut? A. Suction of air through the car. . . . " .

Defendant's motion for judgment on the special findings was overruled and judgment was entered for plaintiff.

Defendant's principal contentions on appeal are that the evidence failed to show any negligence on the part of defendant, and that the evidence affirmatively showed that the plaintiff's injuries were due to her own negligence.

The fact that the door had been loosely swinging most of the journey from Offerle to Ellinwood shows that the door was not fastened, if that of itself would be sufficient to subject the defendant to liability. But an obvious difficulty in this case lies in the fact that plaintiff knew the door was unfastened and had been swinging loosely for most of her journey—"all the time," she says. Moreover she knew it was unfastened when she passed through it. And still further, notwithstanding the unfastened condition of the door she placed her fingers in the door casing, on the side where the door was hinged—a manifestly imprudent and dangerous thing for a mature person to do.

Car-door accidents, injuries and damage suits of this general nature have been of frequent occurrence. Not uncommonly they are determined to be merely accidents, *damnum absque injuria*. (*Hardwick v. Georgia Railroad Co.*, 85 Ga. 507; *Skinner v. Wilmington and Weldon Railroad Co.*, 128 N. C. 435; *L'Hommedieu, Appellant, v. Del., L. & W. R. R. Co.*, 258 Pa. St. 115; 10 C. J. 965, 966, and citations.) Sometimes the jury's finding of some trivial negligence founded on inference and not on fact is set aside by the courts; frequently such finding has to be set aside for want of evidence; and sometimes the facts present a situation where the jury's finding of the carrier's negligence is based upon substantial evidence and must be upheld.

Brehm v. Railway Co.

In *Weinschenk v. New York, N. H. & H. R. R.*, 190 Mass. 250, a similar case, the court said it was at least difficult to say that the plaintiff was in the exercise of due care.

"She knew that the door was open. There was no evidence that it was fastened back, or that she believed it to be fastened back; and it is generally known that the catches of car doors are not intended to hold them securely against being shut, but only to guard against their being lightly or easily moved. This is all that she would have had a right to infer even if she had believed or known that the door was held by a catch." (p. 251.)

In *Merton v. Mich. Cent. R. Co.*, 150 Wis. 540, where the court sustained a ruling of the trial court setting aside the jury's finding of negligence on the part of the railway company in failing to provide a door check to keep the door from slamming shut, the headnote reads:

"Where the door to the toilet room in a passenger car was constructed and operated as such doors usually are, and there was nothing obviously dangerous in such construction or operation, failure to provide a door check to prevent it from closing suddenly was not such negligence on the part of the railroad company as renders it liable for an injury to a passenger who, as he was about to close the door, lost his balance by reason of a sudden swaying of the car, thrust his hand against the jamb of the door to save himself from falling, and was injured by the sudden closing of the door upon his thumb, caused by the same swaying of the car." (Syl.)

Plaintiff relies on the cases of *Colletto v. Hudson & Manhattan R. R. Co.*, 90 N. J. L. 315; *Kellogg v. Boston & Maine Railroad*, 210 Mass. 324, and *Silva v. Boston & Maine Railroad*, 204 Mass. 63, 90 N. E. 547. In the *Colletto* case, the car was so crowded that the plaintiff could not get a seat, and was standing near the door. While the car was turning a curve, plaintiff put his hand on the door jamb to keep from falling, and his hand was caught and injured. The door slid in a groove and when pushed far enough back the door would catch. The court said:

"We think the case was open to a finding that the negligence of the defendant was in failing to throw the door far enough open so that the lock would hold it in place, and that with knowledge to be imputed to it that the door would not stay in place during ordinary operation unless it was properly held by the latch; the duty arose to so fasten the door as to prevent its movement during ordinary operation of the car." (p. 316.)

But in the same opinion the court added:

"The appellant cited two cases which we think not inapplicable, viz., *Hannon v. Boston Railroad Co.*, 65 N. E. Rep. 809, where the passenger was inside of the car as it drew up to the platform and put his hand on the glass of the

door so that when it was opened by the guard standing on the station plat-
form, the plaintiff's hand was caught, and in *Cashman v. New York; New
Haven and Hartford Railroad Co.,* 87 Id. 570, where the plaintiff's hand was
pushed between the door and the jamb of an elevator as the guard was clos-
ing. In both of these cases the act of the plaintiff in putting his hand in a
dangerous place was the proximate cause of the accident, while, in the present
case, the negligence of the defendant was in not properly fastening the door
which he knew was required to be held in place when the train was moving
around a curve." (p. 316.)

In the *Kellogg* case, it was held that the plaintiff—

"Had the right to assume that reasonable precautions had been taken to
enable him to leave the car in safety, that the jury, in the light of their com-
mon experience and knowledge, could have found that unless the catch was
in some way defective it would have worked properly, and that, if the de-
fendant stopped the car for the discharge of passengers where there was such
an inclination of the tracks that a due regard for the safety of passengers re-
quired that some additional precaution should be taken to prevent the un-
expected closing of the doors after they had been opened and caught back,
it was a question of fact whether the accident would have happened if this
duty had been performed properly; so that the case was one for the jury."
(p. 325.)

In the *Silva* case the facts and decision are summarized in sec-
tions 1 and 2 of the syllabus of 90 N. E. 547:

"1. Plaintiff, a passenger, waited sufficient time before starting to leave the
car after the train had stopped and the car door had been opened by the
brakeman, and had been caught so as to hold it open by a device provided
for that purpose; plaintiff having heard it catch when it was opened. In
leaving the car, plaintiff rested her hand upon the door jamb, when the door
came shut without an apparent cause, injuring her hand. *Held,* that the
question of plaintiff's due care in placing her hand on the door jamb, whereby
it was caught by the closing door, was for the jury.

"2. Whether the company was negligent because of a defect in the door
or door catch, or because the brakeman neglected to push the door firmly
against the catch, was for the jury."

The case of *Christensen v. Railroad,* 35 Utah, 137, was practically
identical with the one at bar, except that the injured passenger was
a child of 13 years. While riding on the car she noticed the swing-
ing door. She testified:

" 'I put my left hand on the door frame, and the door came shut on it. I was
going out of the car. Father went out of the car ahead of me, and was out
on the platform. The car had stopped before I got up to go out. I came out
and was outside on the platform of the car. I just came out and then put my
hand on the door frame. I was on the platform outside. I don't know what
I put my hand on the door frame for. I can't describe just what I was doing,
and how I happened to put my hand on the door frame. I was going out

Brehm v. Railway Co.

and then I just put my hand on the door frame, and then the door slammed shut on it.' On cross examination she said: 'I noticed the door was slamming when I was sitting in the car, and that was before I got up to go out. It was just about soon after I got on the train that I noticed the door. . . . That was soon after I got on the train at Ogden, and it continued to slam backwards and forwards.' " (p. 140.)

The court's discussion and review of other car-door cases is instructive, but we can only take space to quote part of the syllabus:

"That while a train was standing still, and after a passenger had passed through a car door to alight, and while her hand was resting on the door jamb, the door closed, injuring her hand, does not show *prima facie* negligence of the carrier; it not appearing that the door had been placed back so as to come in contact with the catch and that the catch was defective." (Syl. ¶ 5.)

The only negligence of the defendant as found by the jury was the brakeman's failure to fasten the door back securely. That hardly amounted to the gravity of negligence at all; but if it be so held, it was an act of negligence of which the plaintiff was well aware, and knowing that the car door was swinging freely and unfastened it was her duty to use reasonable prudence on her own behalf to avoid being injured by this negligence of the defendant. In the sense that the defendant was negligent, plaintiff was likewise negligent; and if defendant is held by such subtle strictness to the consequences of negligence, the plaintiff with much less subtlety must likewise be held guilty of contributory negligence. But we prefer to hold that under the facts testified to by plaintiff and as shown by all the findings made by the jury except No. 1 the plaintiff's injury was caused by an accident merely, and the defendant, not being an insurer of passengers, was not liable therefor.

As to finding No. 1, there was no evidence that the car door had been negligently or insecurely fastened. Plaintiff's evidence was that it was not fastened at all, and that she knew it was not fastened. The brakeman's evidence was—

"I didn't pay any particular attention to the position of the door as I went in and out. There was nothing special to call it to my attention. The door was open as I went out. I don't know whether it was fastened back, or loose."

There could be no *negligent* or *insecure* fastening when there was no fastening of any sort. It is therefore obvious that the jury's special finding of negligence, having no support in the evidence, must be set aside.

The judgment is reversed, and the cause remanded with instructions to enter judgment for defendant.

West, J. (dissenting): The opinion appears to depart from the rule touching the degree of care over passengers which is required of carriers. It is a slight matter to have a spring sufficient to hold a door back, and a door swinging with the movement of the car because of the lack of such a spring is manifestly dangerous to alighting passengers, just about as dangerous as a hole in the platform or any one of a thousand other impediments to safe egress. I think the rule should be followed which is declared in *Walters v. Railway Co.*, 82 Kan. 739, 741, 109 Pac. 173; *Lynch v. Railway Co.*, 92 Kan. 735, 142 Pac. 938, and 4 R. C. L. 1144, 1200, 1208, §§ 586, 623, 631.