## South Covington & Cincinnati Street Railway Company v. Heinrich.

(Decided June 1, 1916.)

### Appeal from Kenton Circuit Court.
(Common Law and Equity Division.)

1. Carriers—Carriage of Passengers—Negligence.—It is negligence in the agents and servants of a street railway company to start.

the car after it has stopped at the usual and regular place for letting off and taking on passengers, while a passenger is in the act of getting on the car, as it is their duty to see that no one is on the steps before starting the car.

2. Carriers—Carriage of Passengers—Negligence.—If a passenger, on account of afflictions or other burdens, is disabled so that he needs assistance in entering the car, it is the duty of those in charge thereof to render or offer to render assistance. And where a lady 57 years of age attempted to board the car at its usual place, she at the time having in charge two small children, one of whom was only 18 months of age, and being carried by her, it was negligence to start the car, as she had only one foot upon the steps and before she got upon the platform, and this is so, although the conductor did not see her situation as it was his duty to have done so before giving the signal for the car to start.

3. Damages—Evidence—Aggravation of Damages.—Testimony having for its only purpose the aggravation of damages, although erroneous, can not be considered when there is no complaint as to the size of the verdict.

4. Damages—Evidence—Incompetency.—Where the charge is, in substance, that the plaintiff's leg was bruised, strained and twisted, to such an extent that a large lump was formed on it, evidence to the effect that the limb was shortened by the injury, is incompetent, as it is not justified by the pleading and is at variance therewith.

5. Carriers—Negligence—Instructions.—An instruction defining only the care which should be exercised in starting the car is improper when the evidence shows that the negligence consisted in failing to discover and observe the situation of the passenger at the time the car was started.

ROBERT C. SIMMONS for appellant.

B. F. GRAZIANI and G. F. BOUGHNER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee, Louise Heinrich, is a resident of the city of Covington, Kentucky, and on December 3, 1914, between the hours of two and three o'clock in the afternoon, she decided to go to Cincinnati, Ohio, and for that purpose attempted to board one of the cars of the appellant, South Covington & Cincinnati Street Railway Co., at the corner of Eleventh and Greenup streets, in Covington. At that time she was about 57 years of age, and she had with her two of her grandchildren, one a boy of about four years of age, and the other a girl baby only eighteen months of age. She was carrying the baby, holding it with her left arm at the time she attempted to

board the car. When the car stopped, she, with her two grandchildren, were at the place where it stopped, which was the usual place for passengers to both alight from and enter the car. As soon as the car stopped, another passenger boarded it and, took a seat near the rear door. Immediately after this passenger entered upon the car, the appellee assisted her four-year old grandson on the car, and then, with the baby on her left arm attempted with the use of her right hand to pull herself upon the car, but she succeeded in getting only one foot upon the steps, when the car started and she, holding to the railing with her right hand, was made to swing against the side, or end, of the car, or some part of the railing at the end thereof, and because of which she sustained injuries for which she brought this suit. The answer is a denial and a plea of contributory negligence. The jury returned a verdict in her favor for the total sum of $850.00, but stated therein that $100.00 of it was for medicine and doctor's bill, incurred by her in the treatment of her injuries. To reverse the judgment, the appellant prosecutes this appeal.

The proof shows that there were several bruises on parts of the appellee's body produced by coming in contact with some portion of the car, and it is shown that she suffered a great nervous shock, and that one of her knee-joints was so injured as to require her thereafter to use a crutch, and that she suffered considerable pain. Inasmuch as there is no complaint in the motion for a new trial because of the size of the verdict, or that the damages assessed by the jury are excessive, we deem it unnecessary to state in detail the testimony concerning her injuries, further than to say that one of the grounds urged for a reversal is the admission of incompetent testimony to the effect that the injured limb is shorter than the other one. This objection was made to the testimony, because it is insisted that the averments of the petition setting forth the injuries, are not sufficiently comprehensive to permit the introduction of this testimony. The language of the petition is: ''She was thrown from said car and dragged for about 50 feet by said car over the rough street, injuring, bruising, straining and lacerating her face, right shoulder, arm, side and leg, and so injuring, twisting, straining and tearing the ligaments of her right leg as to cause an enlargement or lump to form near the knee, and so wrenching and injuring the

plaintiff internally that she has constant sick stomach and vomitting and dizziness and made sick and causing her to continuously fall off in flesh.''

Under the authority of Louisville Railway Co: v. Gaugh, 133 Ky. 4C¯, and cases therein cited, we are of the opinion that the objection is well taken, and that the evidence should not have been introduced. Pleadings should give notice to the adverse party of the charges, or matters, and things, which he is called upon to meet, and no evidence should be admitted when there is not a suffi- cient allegation to justify it. It can hardly be said that the language quoted from the petition is sufficient to have apprised the defendant that it would be called upon to meet a claim of the character mentioned. The only claim made therein is, that her leg was lacerated, and that it was so twisted and strained, and the ligaments torn, as to produce the formation of a lump near the knee. It is nowhere intimated that it was made shorter than the other one.

But we do not think this error prejudicial for two rea- sons: (1) This complained of testimony was introduced during the early part of the trial. The same physician who gave it, together with two others appointed by the court, subsequently examined the injured limb and made accurate measurements and found that there was no reduction in its length. They afterwards gave to the jury the result of this investigation, and the physician who had previously testified as to the shortening of the limb confessed that he was mistaken. Under these cir- cumstances the testimony could not possibly have had any influence upon the verdict.

(2) The second reason is that there is no complaint made as to the size of the verdict, nor that the injuries sustained do not justify it.

As the questioned evidence bore only upon the extent of the injuries, under the circumstances, appellant is in no attitude to complain about its introduction.

Upon the trial, appellant offered and moved the court to give to the jury instruction ''A,'' as follows:

''Unless the jury believe from the evidence that in starting the car, the conductor failed to exercise the ut- most care usually exercised by prudent persons in the same business or similar business, or under the same or similar circumstances, they will find a verdict for defendant.''

But the court declined to give it, to which ruling appellant excepted, and the court gave to the jury instruction Number 1, which, in substance, told the jury that if they should believe from the evidence that the car stopped at the place in question for the purpose of receiving passengers, and that while it was standing still the plaintiff attempted to board it, and while in the act of doing so, but before she had safely gotten upon the car, it was started, and she was thereby thrown against the car and injured, they would find for her. Other instructions properly submitted the question as to the measure of damages should a verdict be returned for the plaintiff, and there was also one upon the subject of contributory negligence.

The rule in this State is, that if a street car stops for the purpose of receiving passengers, and while it is still, a passenger attempts to board it, but before be can do so the car is made to start whereby he receives injuries, the company is liable, whether the movement of the car was an unusual and unnecessary jerk or not. If, however, the passenger has succeeded in landing upon the platform of the car, and is injured before he gets into the car by a starting of it after he has gotten on the platform, the company will not be liable unless the start was made with an unusual and unnecessary jerk or lurch of the car. This rule is stated in the case of Samuels v. Louisville Ry. Co., 151 Ky. 90, thus:

"If a car be moved while a passenger is upon the steps of the car, and before he has had a reasonable opportunity to reach the platform, and he is thereby injured, he is entitled to recover, whether the car is moved by an ordinary and usual or an unusual and unnecessary jerk. The negligence consists in the mere act of moving the car before the passenger has had a reasonable opportunity to board it. L. & N. R. R. Co. v. Arnold, 31 R. 414; C. & O. Ry. Co. v. Borders, 140 Ky. 548. On the other hand, where the passenger has had an opportunity to reach the platform of the car, the company is not liable unless the car is started with an unusual jerk, except in those cases where the passenger is old, feeble, crippled, or in a condition which makes it reasonably apparent to those in charge of the car that he needs unusual care and precaution for his protection. Lexington Railway Co. v. Britton, 130 Ky. 676; I. C. R. R. Co. v.

Ball, 150 Ky. 531." See also I. C. R. R. Co. v. Williams, 163 Ky. 831.

The evidence in this case showed that neither conductor nor any servant of the appellant was at the rear of the car, or about the steps, for the purpose of assisting passengers to board the car, or for the purpose of seeing whether or not passengers attempted to board it. On the contrary, the conductor was near the front end of the car, and states in his evidence that he neither saw, nor could see from the position he occupied, the appellee either before she attempted to board the car, or in the act of doing so; that as soon as he saw the first passenger enter the car, he signalled the motorman to proceed, which was done. As soon as the car started, other passengers, by some character of exclamation, informed him of the perilous situation of appellee, whereupon he signalled the motorman to stop. From this, it will be seen that the conductor was not at the place where he should have been, as it was his duty to know whether or not there were passengers expecting to board the car at usual and regular stopping places, and if the circumstances of passengers are such that they need assistance in getting upon the car, it would be his duty to render such assistance as was commensurate with their needs. Lexington Ry. Co. v. Britton, *supra,* and I. C. R. R. Co. v. Ball, *supra.*

As we have seen in this case, the appellee was encumbered with the task of looking after and taking care of two infant children, one of whom, on account of its youth, she was compelled to carry. In addition to this, the proof shows that she was a large fleshy woman, and these facts were sufficient to warn the conductor and those in charge of the car of her probable need of assistance in boarding it. Her purpose to board the car was not only failed to be observed, but after she had made an effort to do so, encumbered as she was, and while the car was yet standing, the conductor caused the car to move with the results we have stated. According to his own testimony, he clearly failed to perform his duties as required by law.

The offered instruction "A" did not measure the duties of the conductor, under the facts of this case. It limited the care which the conductor should exercise only to the starting of the car, without defining his duties relative to apprising himself of the purpose of a contem-

plated passenger to board the car, or to discover the passenger in the act of boarding it, and then starting it before the passenger gets upon the platform.

We, therefore, conclude that there was no error in refusing this instruction; and we are equally convinced that under the facts of this case, and the authorities from this court to which we have referred, that the law was properly submitted by instruction No. 1, which the court gave, and of which complaint is made.

These objections being the only ones relied upon, and they being insufficient, the judgment is affirmed.