# Staunton

W. H. Scott v. Sadie Cunningham.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Hairston & Hurt, Earl A. Fitzpatrick* and *T. W. Messick,* for the plaintiff in error.

*Horace M. Fox* and *Worrell & Worrell,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is a companion case to *Safety Motor Transit Corporation* v. *Sadie Cunningham, ante,* page 356, 171 S. E.

432, and involves the same verdict and judgment, which were joint against that corporation and W..H. Scott. The facts, from plaintiff's point of view, are sufficiently stated in that opinion.

Scott took numerous exceptions to the ruling of the court on instructions given and refused and made them the basis of nine separate assignments of error. The assignments not specifically mentioned herein involve settled principles of law upon which the ruling of the trial court was clearly right.

The refusal of the court to give instruction 14, requested by defendant, is made assignment of error No. 3. This instruction, if given, in effect, would have told the jury that it was the duty of Safety Motor Transit Corporation to have waited until plaintiff took her seat before starting its bus. It was clearly established by uncontradicted evidence that plaintiff had gotten safely in the bus before it started. No effort was made to defend on the ground of contributory negligence. To require bus and street car companies in cities to wait until all normal passengers are seated before starting their vehicles would unnecessarily delay the users of these means of transportation in reaching their destinations, without appreciably adding to their safety. Defendant relies upon *Norfolk & A. Terminal Co.* v. *Morris' Adm'x,* 101 Va. 422, 44 S. E. 719. The facts in the two cases are clearly distinguishable. In that case the passenger was thrown from the car by the unusual and violent jerk with which it was started. In the case at bar no serious attempt is made to show that there was anything unusual in the starting of the bus. We find no error in the refusal of the court to give this instruction.

The seventh assignment of error is to the action of the court in giving, at the request of Safety Motor Transit Corporation over the objection of W. H. Scott, instruction B, which reads as follows:

"The court instructs the jury that the driver of a vehicle shall not overtake and pass any other vehicle pro-

ceeding in the same direction at any intersection of high-ways; and if you believe from the evidence in this case that the defendant Scott overtook the bus and attempted to pass it at the intersection of Chapman avenue and Thirteenth street, then he was guilty of negligence as a matter of law; and if such negligence was the sole proximate cause of the accident, then he alone is liable to the plaintiff."

■ The only witness who testified that the bus was in motion at the time Scott passed it was the bus driver, Hurd, who stated that the impact occurred before the bus reached the intersection, that perhaps the front of Scott's car was in the intersection, but the rear was not. The other witnesses definitely stated that the bus was standing still at the time Scott passed it. There was therefore no occasion for the jury to be told that it was contrary to the statute for the driver of a vehicle to attempt to pass another in an intersection.

Plaintiff contends that this defendant is urging a different reason here from that urged upon the trial court, and that the same statement is found in her instruction No. 4, to which no objection was made in the lower court, and therefore instruction No. 4 became the law of the case, which precludes this defendant from raising these objections in this court.

■ We think that neither instruction is supported by the evidence, but inasmuch as the petition and record do not clearly reveal that Scott took the proper steps to preserve his objection to instruction No. 4 we will not rest the reversal of the case on these grounds.

It seems that after the jury had been considering the case for some time and had not reached a verdict, the court called them together and went over some of the issues and explained to them the importance of making a diligent attempt to reach an agreement. On this occasion, before the jury retired, one of them asked, "Should Scott proceed into Thirteenth street without looking?" to which the court replied, "It would be his duty before he turned

into Thirteenth street, regardless of the bus, to look to see whether the bus was coming, he cannot make the turn without looking." After some colloquy between counsel and court, the court added, "It was his duty to look back, if he don't look back and there was an automobile there that ran into him and somebody was hurt, that is negligence as a matter of law, not to look back."

Scott testified that when he passed the bus it was standing still some thirty or thirty-five feet east of the intersection; that when he reached the intersection he brought his car almost to a stop and looked to his right and left before entering a much-traveled street and saw there was no passing or approaching vehicle in or sufficiently near to interfere with him in making the turn up Thirteenth street. He was not asked, and did not state, whether or not he gave the signal for a turn to the right. The statute (1932 Code Supplement, section 2154 (122)) imposes upon every driver the duty to exercise ordinary care to see that such a turn can be made with reasonable safety and give the required signal.

From the whole evidence, the jury might readily have found that Scott had gotten in front of the bus before it started from this stop. Subdivision (i) of the above section provides that "Drivers of vehicles, standing or stopped at the curb or edge before moving such vehicles, shall give signals of their intention to move into traffic, as hereinbefore provided, before turning in the direction the vehicle will proceed from the curb." Section 2154 (119), subdivision (a), provides that "The driver of a motor vehicle shall not follow another more closely than is reasonable and prudent, having due regard to the speed of both vehicles and the traffic upon, and conditions of, the highway at the time."

In the absence of evidence to the contrary, we cannot assume that Scott, before making the turn, failed to give the required signal. The burden was upon the plaintiff to prove that Scott did not give the signal. She has failed to carry this burden. If he did give the signal

he had a right to assume that no vehicle standing at or near the curb when he passed would start and follow him more closely than was reasonably prudent under all the circumstances, particularly in view of the fact that at this particular intersection he could not proceed in a straight line, but was compelled to turn, either right or left, or else run into the curb on the opposite side of Thirteenth street, and that no vehicle would pass or attempt to pass him on the right or in the intersection; and that the driver of any vehicle following him, whether directly behind him or not, would keep a proper lookout, heed his signals, and stop, if necessary, before there was danger of collision. In view of all the evidence and the circumstances surrounding the parties, to single out one specific act, or omission, and tell the jury that this particular thing was negligence as a matter of law was highly prejudicial. Whether or not Scott was guilty of negligence was a question for the jury, not the court.

So far as defendant Scott is concerned, the judgment of the trial court must be reversed, the verdict set aside, and a new trial awarded.

*Reversed and remanded.*

Epes, J., dissenting.