No. 34,328

MAY O'CALLAHAN, *Appellee,* v. THE WICHITA TRANSPORTATION CORPORATION, *Appellant.*

(92 P. 2d 23)

Opinion filed July 8, 1939.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris, John F. Eberhardt,* all of Wichita, for the appellant.

*Clarence R. Sowers* and *Claude C. Sowers,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for personal injuries alleged to have resulted from defendant's negligence. The jury answered special questions and returned a general verdict for plain-

tiff for $3,750, on which judgment was rendered. Defendant has appealed.

The facts are not seriously controverted and may be summarized as follows: Waco street, in Wichita, is a north-and-south street and is intersected by First street, an east-and-west street. Defendant is a carrier of passengers for hire, and uses buses in conducting its transportation system. The route of its bus involved here is south on Waco to First and east on First street. The bus stop is before it enters the intersection of Waco and First streets. Plaintiff, a woman about forty years of age, worked in a sewing room at 201 Waco. At quitting time on the evening of April 4, 1938, she and a number of others who worked at the same place, boarded the bus at the bus stop above mentioned. She was the last, or among the last, to get on the bus. The bus was crowded. Plaintiff saw that as she was getting on. She expected to have to stand. That is the usual condition of this bus at this time of the day. The bus had seats for 21 passengers. The conductor testified he loaded 27 passengers. Some witnesses estimated the persons on the bus to be in excess of that number. Plaintiff had entered the bus and dropped her fare in the box provided for that purpose. The conductor closed the door of the bus and started forward, and had made the turn east into First street. For some cause, which is not clear, plaintiff fell through the door of the bus onto the pavement. She testified she did not know what caused her to fall. The bus stopped promptly, plaintiff was helped back into the bus, and several persons asked if she was hurt. To some of these she replied that she was not, to others that she did not know. She went on home that evening and the next day returned to her work, but was not feeling well, and in the afternoon she had to go home. She testified that she went to the county hospital. When and for how long, or for what she was treated there, is not shown. She called a physician April 21, who gave her some treatments up to the time of the trial in December, 1938. We need not recite the medical evidence, since appellant makes no specific complaint of the amount of the verdict if plaintiff is entitled to recover at all.

The petition charged plaintiff with negligence in starting the bus before plaintiff had an opportunity to take a seat; in overcrowding the bus so plaintiff was unable to get a seat; in turning the corner in such a way that it threw plaintiff against the door of the bus; in failing to stop the bus immediately when plaintiff was thrown

against the door; in turning the corner at such speed as to endanger the life and limb of any person, and in failing to observe that passengers on the bus, and particularly the plaintiff, were unable to find seats and had no support or protection in the event a sudden turn of the bus was made. The answer denied the allegations of negligence and contained a plea of contributory negligence. The special questions submitted to the jury and their answers, so far as pertinent on this appeal, are as follows:

"1. At what rate of speed was defendant's bus moving (a) as it turned the corner? A. (a) 8 miles per hour. (b) at the time the plaintiff fell? A. (b) 8-11 miles per hour.

"2. From the time the bus started at the corner until the plaintiff fell was there (a) any unusual or extraordinary lurch, jerk or movement? A. (a) No. (b) Any unusual or extraordinary speed of the bus? A. (b) No.

"3. When the plaintiff fell, was the bus (a) turning on the intersection? A. (a) Yes. (b) Headed east after the turn was completed? A. (b) No.

"4. Did the bus stop immediately when the driver knew that an accident had occurred? A. Yes.

"7. Of what, if any, negligence was the defendant guilty? A. Starting bus before passengers properly located."

The answers to questions Nos. 1, 2 and 4 are in harmony with the evidence. Appellant moved to set aside the answer to question No. 3 on the ground it was contrary to the evidence. This motion should have been sustained. The evidence of all the witnesses, those for plaintiff as well as for defendant, was to the effect that the bus had completely turned the corner and was moving directly east on First street at the time of the incident which gave rise to this action. The only difference in the testimony of the witnesses in that respect is as to how far the bus had proceeded east on First street. Some of them testified it had gone about half a block; others placed it nearer the intersection; but in our view of the record, the particular location of the bus at the time plaintiff fell is not the controlling thing in this case.

The real question is whether defendant was guilty of any negligence. In answering the special questions 1, 2 and 4 the jury found against plaintiff upon her allegations of negligence with respect to the speed of the bus, or any unusual or extraordinary lurch, jerk, or movement, and also against the allegation that the bus was not stopped promptly. The only negligence found by the jury against defendant was in answer to question 7: "Starting bus before passengers properly located." The defendant moved for judgment on the answers to the special questions notwithstanding the general ver-

dict. This motion was overruled. Appellant contends it should have been sustained for the reason that the only thing the jury found as constituting negligence does not, as a matter of law, amount to negligence of defendant. The authorities appear to sustain that view.

In 13 C. J. S. 1366, referring generally to the duties of carriers, it is said:

"Ordinarily, it is not negligence to start a vehicle after a passenger has got on board the vehicle but before he has reached a seat, unless there is some reason to apprehend danger in so doing, or the movement is made in a negligent manner."

And at page 1382, treating particularly of street cars, it is said:

"It is generally held that it is not necessary to hold a car until a passenger is seated, and that the carrier is not liable for injuries sustained by a passenger while in the act of taking a seat, in consequence of the starting of the car, unless it is started in a violent, unusual, or reckless manner, or unless the unusual conditions and circumstances surrounding a particular passenger, as in case of an enfeebled or infirm passenger, require that the car be held until he is seated."

To the same effect, see 10 Am. Jur. 252, 253.

In *McRae v. Boston Elevated Railway*, 276 Mass. 82, 176 N. E. 773, it was said:

"In the absence of proof of special circumstances a street railway company may start a streetcar which has stopped to take on passengers as soon as all are fully and fairly within it (citing cases). . . . No contention has been made that the differences in the two modes of transportation should lead us to adopt a rule in respect to jerks and jolts of motor buses in stopping and starting different from that which obtains in the case of street railway cars." (pp. 83, 84.)

The following cases are to the same effect: *Herbich v. North Jersey St. Ry. Co.*, 65 N. J. L. 381, 47 Atl. 427; *Brocato v. United Rwys. & E. Co.*, 129 Md. 572, 99 Atl. 792; *Adams v. United Electric Railways Co.*, 46 R. I. 312, 128 Atl. 197; *Belledeau v. Connecticut Co.*, 110 Conn. 625, 149 Atl. 127; *Wood v. P. R. R. Co., Appellant*, 111 Pa. Superior Ct. 430, 170 Atl. 367; *Phinney v. Eastern Massachusetts Street Ry.*, 285 Mass. 207, 189 N. E. 52; *Worez v. Des Moines C. R. Co.*, 175 Ia. 1, 156 N. W. 867; *Birmingham Railway Light & Power Co. v. Hawkins*, 153 Ala. 86, 44 So. 983; *Murphy v. New Orleans Public Service*, (La. App.) 169 So. 890; *Scott v. Cunningham*, 161 Va. 367, 171 S. E. 104; *Georgia Power Company v. Watts*, 56 Ga. App. 322, 192 S. E. 493; *Howard v. Louisville Ry. Co.*, 32 Ky. Law Rep. 309, 105 S. W. 932.

The reason for the rule announced by the above authorities, and stated in several of them, is the public demand for rapid transportation, particularly in cities and other congested areas. If the rule as stated did not prevail there would be much slowing up of such traffic. More than that, experience has demonstrated that the practice is not inherently dangerous. It is rare indeed that any injury results therefrom.

Counsel have furnished us with no authority, and our own research discloses none, in which the mere fact of starting a street car, or a motor bus, or a railway train (note language in the opinion, *Railway Co. v. Warren,* 74 Kan. 244, 249, 89 Pac. 656), after a passenger is safely within the vehicle, and before he has found a seat or a location at which he wishes to ride, is held to be negligence.

There are cases, of course, where the vehicle was started before the passenger was safely within it; but that is not this case. There are also cases in which the vehicle started with an unusual and extraordinary lurch, jerk, or movement; but that is not the case here; the jury specifically found to the contrary.

Appellee talks about the crowded condition of the bus. The jury did not find defendant negligent for that reason, and it does not appear from the evidence that had anything to do with the fact that plaintiff fell. Several of the witnesses who boarded the bus at the same time were finding seats. It is not clearly shown plaintiff could not have found one. More than that, the crowding of the bus at that time of the day was normal. Plaintiff knew it when she started to board the bus; she expected to stand.

Appellee cites *Lobner v. Street-railway Co.,* 79 Kan. 811, 101 Pac. 463, where a passenger was pushed off an overcrowded street car and sustained injuries, and it was held his evidence was sufficient to go to the jury, and suggests that perhaps plaintiff fell because she was pushed or crowded off the bus. This is purely speculative. We find no evidence in the record to sustain that theory, it was not alleged as one of the grounds of negligence, and was not found by the jury.

We feel compelled to hold there was no showing or finding of defendant's negligence in any respect and that its motion for judgment on the answers to the special questions notwithstanding the general verdict should have been sustained.

The judgment of the court below is reversed with directions to enter judgment for defendant.